UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

MARK A. MONTE,

                Plaintiff,

v.                                                                  Case No. 5:08-cv-101-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability, disability insurance benefits, and supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 9), and both parties have filed briefs outlining their respective positions. (Docs. 16 & 17.) For the reasons discussed below, the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I. PROCEDURAL HISTORY

On February 24, 2004, Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of August 1, 2003. (R. 25, 102-04, 141-42, 359-62.) Plaintiff's application was denied initially and upon reconsideration. (R. 39-42.) Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 48.) The ALJ conducted Plaintiff's administrative hearing on November 15, 2006. (R. 363-94.) The ALJ issued a

decision unfavorable to Plaintiff on January 27, 2007. (R. 25-38.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied. (R. 6.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5] The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, he is disabled.[11] Fourth, if a claimant's impairments do not

---

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

prevent him from doing past relevant work, he is not disabled.[12] Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.

Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker, 826 F.2d at 1003 ("The
(continued...)

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as the ALJ introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was forty three (43) years old at the time of the ALJ's decision on January 22, 2007. (R. 25-38, 368.) He has a ninth grade education and has previous work experience as a construction laborer, plumber's helper and machine operator. (R. 28, 368-70.) Plaintiff contends that he has been unable to work since August 1, 2003 due to back pain disorder, mental disorder and Hepatitis C. (R. 25, 141.) Plaintiff is insured for benefits through March 31, 2007. (R. 112.)

---

[17](...continued)
grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).

[19] Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

Plaintiff raises two issues in his appeal both of which only challenge the ALJ's assessment of the functional limitations associated with Plaintiff's mental health. Accordingly, the Court will limit its discussion of Plaintiff's medical records to Plaintiff's mental impairments.

In June 2004, Dr. Edward Demmi examined Plaintiff at the request of the Social Security Administration primarily for evaluation of Plaintiff's complaints of back pain. Upon examination, Dr. Demmi observed that Plaintiff was alert and oriented, with normal affect and mood. Dr. Demmi also noted that Plaintiff's intellectual functioning appeared normal. (R. 258-59.)

In November 2004, Dr. Lawrence Fields examined Plaintiff at the request of the Social Security Administration primarily for evaluation of Plaintiff's complaints of back pain. During the examination, Plaintiff complained of high levels of anxiety and panic attacks for the past six to twelve months. Examination revealed that he was markedly anxious. Dr. Fields diagnosed Plaintiff with anxiety and referred him for further psychological testing. (R. 269-71.)

In March 2005, Plaintiff presented to Gary Honickman, Ph.D, a clinical psychologist, for a consultative examination with complaints of a history of back problems and panic disorder with agoraphobia. Plaintiff advised Dr. Honickman that he had panic attacks most of the time whenever he leaves his home. Plaintiff further advised that he is unable to go into a restaurant, and often unable to even go to a grocery store to pick up a single item without experiencing a panic attack. According to Dr. Honickman, the symptoms Plaintiff described were "classic panic attack symptoms."

Plaintiff informed Dr. Honickman that, at the time of the examination, he was only taking ibuprofen because he could not afford prescription medications.

Upon examination, Dr. Honickman noted that, although Plaintiff was friendly and polite, he was "very shaky and anxious and his arms revealed a tremor when he held them outstretched." Plaintiff informed Dr. Honickman that he was unable to relax. Examination revealed that Plaintiff was disoriented as to time with a highly anxious mood and affect. Dr. Honickman described Plaintiff's fund of general information as "fair at best" and noted that Plaintiff's abstract thinking was impaired. Plaintiff's thought processes were organized and his thought content was appropriate, but Dr. Honickman observed that Plaintiff's insight and judgment were "fair." Based upon his examination, Dr. Honickman diagnosed Plaintiff with panic disorder with agoraphobia and a sleep disorder. (R. 283-84.)

Dr. A. Alvarez-Mullin, a nonexamining state agency psychiatrist, reviewed Plaintiff's medical records in April 2005 and prepared a Mental Residual Functional Capacity Assessment. Dr. Alvarez-Mullin opined that Plaintiff was moderately impaired in his ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; complete a normal workday without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; travel in unfamiliar places or use public transportation; and to set realistic goals or make plans independently of others. Dr. Alvarez-Mullin acknowledged Plaintiff's recent diagnosis of panic disorder with agoraphobia but noted the absence of medical records concerning

7

mental health treatment or medications. He opined that "[Plaintiff] may have difficulty sustaining attention and pace on occasions, and he may have some difficulty in a job situation where interaction with others is ongoing as the anxiety could then increase and interfere with concentration, and general performance. He is, however, able to interact appropriately with others and able to carry out simple / short instructions. Mental health services are needed and once claimant is on med[ication]s for the anxiety disorder symptoms would be expected to go under control." (R. 285-87.) Dr. Alvarez-Mullin also prepared a Psychiatric Review Technique and assessed Plaintiff's functional limitations as follows: mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistance, or pace; and no episodes of decompensation. (R. 299)

In August 2006, Plaintiff presented to the Marion County Health Department-Belleview for a routine check up with complaints of back spasms. The physician diagnosed Plaintiff with depression and multiple orthopedic injuries and prescribed Prozac. (R. 315.)

During the hearing on November 15, 2006, Plaintiff testified that the primary reason why he stopped working is his back pain. (R. 372.) Due to the pain and limitations caused by his back pain, Plaintiff experiences anxiety and depression. (R. 378.) Plaintiff testified that he is depressed because, after four surgeries on his back, he continues to experience increasing levels of pain and he believes his physicians are unable to do anything to help resolve his pain. (R. 378.) According to Plaintiff, he does not go out or socialize at all. (R. 379.) He does not like to be around people because he

8

believes that when people see him in pain they "know [he is] weak." (R. 378.) He goes to the grocery store infrequently because leaving his home causes him to experience panic attacks. (R. 379.) Plaintiff described an incident in which he was waiting in line at the grocery store and began "shaking so bad" he was unable to hand his money to the cashier and so he left the store without his groceries. (R. 379.) Plaintiff testified that his appetite and sleeping habits have changed and he has a low tolerance for stress. (R. 380.)

He described his typical day as "living on the couch." (R. 383.) He does not do his own laundry, he does not do anything around the house other than watch television, and he showers once a week. (R. 384.)

According to Plaintiff, he is receiving treatment from the Marion County Health Department for his mental health complaints. (R. 379.) Plaintiff is currently taking Prozac twice a day. (R. 379.) Plaintiff testified that his physician has had to make multiple changes to his Prozac dosages because "it wasn't working." In fact, Plaintiff testified that his Prozac dose had doubled in the month and a half preceding the hearing. (R. 380.)

In the ALJ's review of the record, including Plaintiff's testimony, medical records from several health care providers, and testimony from a vocational expert ("VE"), the ALJ determined that Plaintiff's back disorder and pain disorder were severe impairments. (R. 28.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the

9

impairments listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations. (R. 28.)

The ALJ then found that Plaintiff retained the RFC to perform the exertional demands of sedentary work. (R. 28.) The ALJ limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching and crawling; never climbing ropes, ladders, or scaffolding, avoiding concentrated exposure to fumes, odors, and dust and to avoid moderate exposure to hazards such as machinery and open, unprotected heights. Further, the ALJ found that Plaintiff can only understand, remember, and carry out simple instructions. (R. 28.) After finding that Plaintiff could not perform his past relevant work as a construction laborer, plumber's helper and machine operator, the ALJ consulted a vocational expert ("VE"). (R. 35-37.)

## IV. **DISCUSSION**

The Plaintiff raises two issues on appeal. First, Plaintiff argues that the ALJ committed reversible error by failing to articulate any reasons for not incorporating Dr. Alvarez-Mullin's opinion in its entirety into Plaintiff's RFC. Second, Plaintiff argues that the ALJ erred in relying on vocational expert ("VE") testimony that conflicted with the Dictionary of Occupational Titles ("DOT").

In opposition, the Commissioner argues that the ALJ properly considered, credited, and incorporated Dr. Alvarez-Mullin's opinion when he assessed Plaintiff's RFC. The Commissioner also argues that the ALJ properly relied on VE testimony in determining that Plaintiff was capable of performing work which exists in significant numbers in the national economy.

With respect to the ALJ's assessment of Plaintiff's RFC, Plaintiff challenges the ALJ's failure to explain why he incorporated only portions of Dr. Alvarez-Mullin's opinion into his assessment of Plaintiff's RFC. In his written decision, the ALJ expressly stated that he gave "significant weight to Dr. Alvarez-Mullin's opinions regarding [Plaintiff's] mental functional abilities." Specifically, the ALJ found that Plaintiff "has mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation." (R. 35.) However, the only mental limitation incorporated into Plaintiff's RFC—as well as the only mental limitation presented to the vocational expert in a hypothetical—was the Plaintiff's ability to understand, remember, and carry out simple instructions. (R. 28, 388.) According to Plaintiff, neither Plaintiff's RFC nor the hypotheticals presented to the VE during the hearing addressed the portion of Dr. Alvarez-Mullin's opinion that, *in addition* to Plaintiff being moderately impaired in his ability to understand, remember, and carry out detailed instructions, Plaintiff was *also* moderately impaired in his ability to: (1) maintain attention and concentration for extended periods of time; (2) complete a normal workday without interruptions from psychologically based symptoms; and (3) to perform at a consistent pace without an unreasonable number and length of rest periods.

In opposition, the Commissioner argues that the ALJ's inclusion of the limitation that Plaintiff is only "able to understand, remember and carry out simple instructions" adequately incorporates and is consistent with Dr. Alvarez-Mullin's overall assessment of Plaintiff. According to the Commissioner, the ALJ's decision to incorporate the

11

limitation that Plaintiff is capable of performing work that involves only simple instructions should be interpreted to encompass Dr. Alvarez-Mullin's assessment that Plaintiff "may have difficulty sustaining attention and pace on occasions, and he may have some [d]ifficulty in a job situation where interaction with others is ongoing as the anxiety could [t]hen increase and interfere with concentration, and general performance."

When assessing the Plaintiff's impairments, the ALJ was required to "make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled."[22] Additionally, because an ALJ is not permitted to substitute his judgment for that of the medical experts,[23] the ALJ cannot reject portions of a medical opinion without providing an explanation for such a decision.[24] Where an ALJ fails to sufficiently explain how he reached his decision, the Court may not speculate.[25] Accordingly, the discrete issue before the Court is whether the ALJ sufficiently explained his rationale for including only portions of Dr. Alvarez-Mullin's opinion in Plaintiff's RFC.

The ALJ noted that he gave "significant weight" to Dr. Alvarez-Mullin's opinion and concluded that Plaintiff had moderate limitations in his ability to maintain concentration, persistence and pace. However, by only discussing the Plaintiff's ability

---

[22] Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).

[23] Graham v. Bowen, 786 F.2d 1113, 1115 (11th Cir. 1986); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982).

[24] Morrison v. Barnhart, 278 F. Supp. 2d 1331, 1337 (M.D. Fla. 2003).

[25] Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984).

to carry out simple tasks, the ALJ neglected the portion of Dr. Alvarez-Mullin's opinion that addressed limitations in Plaintiff's ability to maintain attention and concentration for extended periods of time, complete a normal workday without interruptions from psychologically based symptoms, and to perform tasks—whether simple or complex—at a consistent pace without an unreasonable number and length of rest periods. The ALJ's written decision, however, is silent with regard to whether those limitations were considered in evaluating Plaintiff's RFC and the rationale for declining to include those limitations in Plaintiff's RFC.

The Commissioner urges the Court to interpret Dr. Alvarez-Mullin's comment that "[Plaintiff] is, however, [a]ble to interact appropriately with others and able to carry out simple/short instructions" as fully incorporating all of Plaintiff's limitations associated with his concentration, persistence and pace. In the absence of any mention of the limitations in the ALJ's written decision, the Court may not draw that inference. While it is possible that the ALJ may have found that Plaintiff is capable of carrying out simple, short instructions *at a consistent pace for an extended period of time without an unreasonable number of interruptions*—the ALJ never said this nor did he discuss any mental limitation other than a restriction to carrying out simple, short instructions. While Plaintiff's concentration, persistence, and pace may only have been deficient with respect to the completion of complex tasks, there is simply no way for the Court to discern this from the decision. To assume that the ALJ took these limitations into consideration in evaluating Plaintiff's RFC would be purely speculative on the part of the Court. Consequently, the ALJ was required to address Plaintiff's limitations with regard

13

to Plaintiff's concentration, persistence and pace and Plaintiff's limitations with regard to the ability to work for extended periods of time without an unreasonable number of interruptions, and to include the limitations or discuss the reasons for not including these limitations in Plaintiff's RFC.

Accordingly, the ALJ committed reversible error by failing to either explain why he adopted only part of Dr. Alvarez-Mullin's opinion after expressly giving it significant weight, or in failing to adequately incorporate all of Plaintiff's mental limitations into his assessment of Plaintiff's RFC.

The Plaintiff also argues that the ALJ improperly relied on vocational expert testimony that conflicts with the Dictionary of Occupational Titles (DOT). On this issue, there was no reversible error.

The vocational expert listed three categories of jobs that an individual with Plaintiff's RFC could perform: call-out operator, surveillance system monitor, and bench assembler-watches. On appeal, Plaintiff only suggests that two of them are in conflict with the DOT. The Plaintiff does not contend that the third job category, bench assembler-watches, is in conflict with the DOT. Therefore, even if the first two jobs (call-out operator and surveillance system monitor) identified by the VE conflicted with the DOT, it would not be reversible error if there were significant number of jobs in the national economy in the third job category (bench assembler-watches) which Plaintiff could perform.

With regard to the bench assembly category, the VE testified that "cumulative statistics for the [bench assembly category] is, in the region, 3,167, and in the national

14

economy, 104, 451." (R. 390-91.) Thus, because there was evidence that there was a significant number of available jobs in this category - and the testimony of the VE as to this category was not in conflict with the DOT - Plaintiff's argument fails, even assuming he is correct with regard to a conflict between the DOT and the other two job categories. The discussion is, however, purely academic in view of the fact that the Court has concluded that the ALJ erred in evaluating Plaintiff's mental RFC, and on remand, the ALJ must address all of the Plaintiff's mental limitations. As such on remand the ALJ will be required to pose new hypothetical questions to the VE and thus Plaintiff's current argument and challenge to the ALJ's conclusion at step five is irrelevant to the result.

## V. CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). Upon remand, the Commissioner should: (1) re-address Dr. Alvarez-Mullin's assessment of Plaintiff and specifically articulate reasons for either accepting or rejecting each aspect of Dr. Alvarez-Mullin's opinion concerning Plaintiff's limitations with respect to his ability to maintain concentration, persistence and pace; (2) reassess Plaintiff's residual functional capacity based on all of the evidence of record; (3) if necessary, obtain vocational expert testimony regarding whether there is other work in the national economy Plaintiff could perform; and (3) conduct such further proceedings

15

as the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of Plaintiff consistent with this Order and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on January 28, 2009.

Copies to:
    All Counsel

GARY R. JONES
United States Magistrate Judge